TRUTH TABERNACLE, an unincorporated association, organized and existing under the laws of the State of Maine, by and through REV. JUDAH GATLING, RICHARD TAYLOR, and MARTIN LIEBAU, Trustees and Members of TRUTH TABERNACLE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Truth Tabernacle v. Commissioner
Docket No. 7496-79X.
United States Tax Court
T.C. Memo 1981-214; 1981 Tax Ct. Memo LEXIS 530; 41 T.C.M. (CCH) 1405; T.C.M. (RIA) 81214; April 29, 1981. Richard S. Kestenbaum, Larry N. Johnson, and Lewis R. Mandel, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined that petitioner is not exempt from Federal income tax under section 501(c)(3), [1] and that petitioner is not a church. The prerequisites for declaratory judgment having been satisfied, [2] petitioner has, pursuant to section 7428, invoked the jurisdiction of this Court. *532 The issues for our determination are (1) whether petitioner is organized exclusively for one or more exempt purposes delineated in section 501(c)(3); (2) whether petitioner is operated exclusively for one or more of those exempt purposes; (3) whether any part of petitioner's net earnings inures to the benefit of a private shareholder or individual; and (4) whether petitioner is a church as described in section 170(b)(1)(A)(i). The case was submitted on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by reference. Petitioner, an unincorporated organization established in 1974 as the Work of Life Tabernacle and subsequently changing its name to Truth Tabernacle, has its principal meeting place in Richmond, Maine. Prior to respondent's issuing an adverse ruling letter to petitioner, no Application for Recognition of Exemption was filed. [3]
*533 On March 9, 1979, respondent issued to petitioner a final adverse ruling letter which denied petitioner tax-exempt status for the following reasons: that Truth Tabernacle fails to meet the organizational test of Section 1.501(c)(3)-1(b) of the Regulations ince its assets are not dedicated to an exempt purpose. Truth Tabernacle also fails to meet the operational test set forth in section 1.501(c)(3)-1(c) of the Regulations since it has not established that it is a church. No information has been furnished to show that the organization conducts religious services and has a regular congregation of persons who meet regularly. You maintain neither a seminary nor a bible school, and your members are drawn from many churches and remain affiliated with those churches. It appears that you seek converts to the principals [sic] of christianity generally.
Moreover, Truth Tabernacle fails to meet the operational test since the information submitted indicates that it is serving the private interest of the Reverend Judah Gatling, its General Overseer, who virtually operates and controls the church at his will. In addition it also serves the private interest of other trustees. Furthermore, *534 Truth Tabernacle has not maintained proper financial records so that it can be determined that its expenditures are used for charitable purposes. No information has been provided with respect to income and contributions received by you. The general statement of expenses for 1976 that was provided by Truth Tabernacle only discloses that the majority of money spent by the organization was for maintenance and upkeep of the property.There is, as a result, insufficient information to determine whether Truth Tabernacle is operated exclusively for any exempt purpose. There are no written articles of association or corporate charter. Under the bylaws, the General Overseer, a position held by the Reverend Judah Gatling (Gatling), determines qualifications for active and associate membership, the suspension of any member, the number of meetings (apart from one annual meeting, undescribed in nature, on March 10th of each year), the nomination and removal of officers, the composition of the Mothers of Israel Committee who are in charge of cleaning and maintaining the association's building, who instruct young women in the Word of God, and who are in charge of the children's and ladies' activites. *535 Essentially, the General Overseer's duties, according to the organization's bylaws, are "to supervise, control and direct the affairs of the association." Gatling is also a trustee of petitioner and has exclusive control of petitioner's property.The bylaws lack a statement regarding petitioner's purpose. [4]
*536 Unaffiliated with any organized religious denomination, petitioner does not subscribe to any formal creed or dogma. Petitioner has approximately 56 members, but members are not required to meet any formal conditions or to renounce their former, or other, religious beliefs. Petitioner's beliefs include the infallibility of the Christian Bible. Gatling states, "We do not have a creed but Christ. No law but love. No book but the Bible." Evangelical services are conducted on a weekly basis. Petitioner is situated on Highway 201, in Richmond, Maine on 5 acres of land. Gatling resides in an apartment of one of the buildings on a rent-free basis. Petitioner, in addition, pays all the utilities for this apartment. Petitioner also provided three of its other trustees with cabins for use as their residences although each was responsible for paying his own maintenance and utilities costs. [5] No information was provided to show the amount of time and effort spent by Gatling and the other trustees for petitioner's work. Petitioner performs Christian rites, such as baptisms, communion *537 services, foot washing, weddings and burials, but Gatling has no civil authority to perform marriage ceremonies. Ministers are not required to attend any particular Bible school but must be well versed in the scriptures and holy living. Petitioner maintains no religious school or seminary for the ordination of ministers. Petitioner maintains no formal accounting records, no records of contributions and no documentation to verify ownership of its property or the use of its funds. Petitioner furnished respondent only with a statement of expenditures for 1976, which showed that most payments were for utilities, mortgage, automobile, construction, insurance, and maintenance of its buildings. Petitioner, which has not submitted a brief, maintains that it is a church and an organization described in section 501(c)(3). Respondent, by contrast, contends that petitioner fails both the organizational and operational tests of section 501(c)(3) because (1) it is not organized exclusively for one or more exempt purposes; (2) it does not operate exclusively for one or more exempt purposes; and (3) all or part of its net earnings inure to the benefit of a private shareholder or individual. *538 We agree with respondent. Petitioner has the burden of proving respondent's determination is wrong. Hancock Academy of Savannah, Inc. v. Commissioner, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure.
In order to be exempt under section 501(c)(3), an organization must qualify under both the organizational and the operational tests. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.
Under the organizational test, an organization's articles of organization [6] must limit its purposes to one or more exempt purposes and not specifically empower the organization to engage, except insubstantially, in activities not in furtherance of one or more exempt purposes. Sec. 1.501(c)(3)-1(b)(1), Income Tax Regs. An organization will not meet the organizational test unless its assets are dedicated to an exempt purpose; upon dissolution, its assets must, by operation of law or because of a provision in the organization's articles, be distributed for one or more exempt purposes and not distributed to its members or shareholders. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.
*539 Petitioner has submitted no charter or articles of association. Its bylaws, moreover, do not state its purpose or provide for the distribution of its assets upon dissolution.Unlike in Elisian Guild, Inc. v. United States, 412 F.2d 121 (1st Cir. 1969), [7] petitioner's bylaws do not "clarify any ambiguity that might otherwise exist in the Articles," id. at 124; rather they provide little, if any, information to distinguish petitioner as an exempt organization as defined by section 501(c)(3). While the circuit court in Elisian Guild, Inc., supra, has held that an organization's purpose may be inferred from its operation, petitioner has not shown through its operations [8] that its purpose is a religious or charitable one. The laws of the State of Maine provide that a charitable organization incorporated under that state's laws must devote its assets upon dissolution only to charitable purposes. Me. Rev. Stat. ch. 13, sec. 939 (1980 Supp.). Petitioner, however, is not incorporated under the laws of the *540 State of Maine. Petitioner, moreover, has not established that it exists for and serves a charitable purpose. Under these circumstances, we find that petitioner's assets are not dedicated to an exempt purpose as required by sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.
Likewise, petitioner has failed the operational test.The operational test requires that an organization's activities be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3) and not, except to an insubstantial part, those which do not further an exempt purpose. Sec. 1.501(c)(3)-1(c)(1), Income Tex Regs. Moreover, an organization is not operated exclusively for one or more exempt purposes unless it serves a public rather than private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. See Baltimore Health and Welfare Fund v. Commissioner, 69 T.C. 554 (1978); CallawayFamily Association v. Commissioner, 71 T.C. 340 (1978). An organization must, therefore, prove that it is not operated for the benefit of private interests of individuals such as the creator and his family. Basic Bible Church v. Commissioner, 74 T.C. 846 (1980). *541 Gatling, as General Overseer, has exclusive control of petitioner's property. Petitioner maintains no formalized set of accounting records, no records of contributions and no documentation of the use of its funds. The statement of expenditures furnished for 1976 discloses that most of petitioner's expenditures for that year were made for utilities, mortgage payments, and maintenance of property used by Gatling. With this paucity of information, petitioner has failed to prove that it serves a public rather than a private purpose. See Church of The Transfiguring Spirit, Inc. v. Commissioner, 76 T.C. 1 (1981); Southern Church of Brotherhood v. Commissioner, 74 T.C. 1223 (1980); Western Catholic Church v. Commissioner, 73 T.C. 196 (1979), affd. in an unpublished opinion 631 F.2d 736 (7th Cir. 1980). Finally, the petitioner has not proved that all or a part of its net earnings did not inure to the benefit of a private shareholder or individual as required by section 1.501(c)(3)-1(c)(2), Income Tax Regs. Net earnings may include more than net profits; additionally, the amount or extent of such benefit is not determinative *542 of a finding of private inurement. Unitary Mission Church v. Commissioner, 74 T.C. 507 (1980), affd. in an unpublished opinion     F.2d     (2d Cir., Feb. 17, 1981). A private shareholder or individual is a person who has a personal and private interest in the activities of the organization. Sec. 1.501(a)-1(c), Income Tax Regs.
Gatling and two other members of petitioner, Lawrence Liebau and Richard F. Taylor, live rent free on church property. Petitioner pays all of Gatling's expenses and he has unrestricted control over petitioner's property. The information in this administrative record thus fails to demonstrate that no part of petitioner's earnings inure to the private benefit of individuals. See Church of The Transfiguring Spirit, Inc. v. Commissioner, supra; Bubbling Well Church v. Commissioner, 74 T.C. 531 (1980), on appeal (9th Cir., July 7, 1980); Unitary Mission Church v. Commissioner, supra.
Because petitioner fails both the organizational and operational tests, [9] it clearly does not qualify for exemption from Federal taxation under sections 501(a) and 501(c)(3). *543 An appropriate decision will be entered. Footnotes
1. Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954, as amended. ↩
2. Petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3).↩
3. Form 1023 was filed subsequently and was marked received by the Internal Revenue Service on March 22, 1979. In making our determination here, however, we may only consider evidence submitted under the administrative record. See Gen. Conf. of The Free Church v. Commissioner, 71 T.C. 920 (1979); Houston Lawyer Referral Serv. v. Commissioner, 69 T.C. 570, 577-578↩ (1978).
4. Petitioner's bylaws state the following: BY-LAWS OF TRUTH TABERNACLE 1. The name of this association shall be the Truth Tabernacle. 2. The principle [sic] office of this association shall be at Richmond, Maine. 3. MEMBERSHIP. a. Active Membership. Any person who meets the qualifications as set forth by the General Overseer is eligible to become an active member of this association. b.Associate Membership. Anyone interested in the activites of the association may be awarded an associate membership under such terms and with such privileges as the General Overseer or someone at his direction may determine. c. Voting. Each active member shall be entitled to vote as provided in these Bylaws. d. Duration of Membership. Membership in this association may terminate by voluntary withdrawal as herein provided or otherwise as provided in these rules. All rights, privileges, and interest of a member in or to the association shall cease on termination of membership. Memberships shall be non-transferable. Any member may, by giving written notice of such intention, withdraw from membership.Withdrawals shall be effective on fulfillment of all obligations to the date of the withdrawal. e. Suspension.If, in a written and signed communication addressed to the General Overseer, any member of the association shall be charged with conduct detrimental to the objects of interests of the association or in violation of its constitution, bylaws, code of ethics, or rules and regulations, the General Overseer shall consider the matter and if he shall decide to take further action, the secretary shall send a copy of the charges to the accused member, who shall be given adequate time to reply, whereupon the General Overseer shall take such further action as it may deem proper. If the General Overseer after a fair and impartial hearing on due notice to the accused member, such notice to be given by the secretary by registered or certified mail to the accused member at his last known address at least seven (7) days before the hearing, shall be satisfied of the truth of the charges, the General Overseer may request the offending member to resign or may suspend or expel him. Should he decline to resign on such request, his name shall be stricken from the rolls by the General Overseer. 5. Meetings. There shall be an annual meeting of the association on the tenth day of March each year, unless otherwise ordered by the General Overseer. Meetings shall be open to active members and associate members. a. Quorum. A majority of the active members of this association when present at any meeting shall constitute a quorum and if there is less than this number, the presiding chairman may adjourn from time to time until a quorum is present. 6. Officers. The following officers shall be nominated by the General Overseer and confirmed by a majority vote of the active members of the association. a. Trustees, Deacons and Elders. b. Terms. The above named officers shall serve a one year term and are eligible to serve more than one year. Vacancies in any office may be filled for the balance of the term thereof by the General Overseer. The General Overseer may determine at his discretion whether the officers of the association are fulfilling their duties and may remove them whenever he deems it proper and necessary. The qualifications of the offices of Trustees, Deacons and Elders shall be as follows: They must be of good reputation both within the Church and the Community, and shall be the husband of one wife and must have their house in subgation. The duties of the officers shall be as follows: Trustees: Shall have the responsibility of maintenance of all church property and are responsible for all financial and business matters of this association. The term of the Trustees shall be one (1) year. Deacons: Shall be responsible for maintaining good order in the Church or at any Church related authority. The deacons are authorized to take whatever steps they may deem necessary to maintain good order. The term of the Deacons shall be one (1) year. Elders: Shall oversee and supervise all temporal and spiritual matters, and shall be responsible for overseeing the members of the Church and such other duties as the General Overseer may from time to time establish. The term of the Elders shall be as long as they fulfill their duties satisfactorily. The General Overseer: The General Overseer position shall be held by the Reverend Judah Gatling. The duties of the General Overseer are to supervise, control and direct the affairs of the association. Committees: There shall be a committee known as the Mothers of Israel, membership of which shall be selected by the General Overseer and approved by the congregation. The Mothers of Israel shall be in charge of cleaning and maintenance of the building of the association. They shall instruct the young women in the Word of God and be in charge of the children's and ladies' activities. These Bylaws may be amended, appealeld or altered in all or in part by a majority vote of the members of the association at any duly called meeting for such purpose. Approved /s/ Rev. Judah Gatling, /s/ Lawrence M. Liebau, /s/ John R. Peterson, /s/ Norman McIntyre, /s/ Richard F. Taylor (Secretary)↩
5. As of October 17, 1978, two of these trustees still resided on petitioner's property.↩
6. This term includes the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created. Sec. 1.501(c)(3)-1(b)(2), Income Tax Regs.↩
7. An appeal in this case would lie in the Court of Appeals for the First Circuit.↩
8. See discussion in text infra↩.
9. An organization's failure to satisfy either↩ one of these tests would disqualify it from exemption.